UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

**Cecilia O. Taiwo,**                           Civ. No. 12-1762 (ADM/AJB)

       Plaintiff,

                                  **REPORT AND RECOMMENDATION**

v.

**Carolyn W. Colvin,**[1]

**Commissioner of Social Security**,

       Defendant.

___

Edward C. Olson, Esq., 331 Second Ave. South #420, Minneapolis, MN 55401, for Plaintiff.

Ana H. Voss, Asst. United States Attorney, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for the Commissioner.

ARTHUR J. BOYLAN, United States Chief Magistrate Judge

       The matter is before this Court, United States Chief Magistrate Judge Arthur J. Boylan, for a report and recommendation to the District Court on the parties' cross-motions for summary judgment. *See* 28 U.S.C. § 636(b)(1) and Local Rule 72.1. This Court has jurisdiction under 42 U.S.C. § 405(g). Based on the reasoning set forth below, this Court recommends that Plaintiff's motion for summary judgment [Docket No. 14] be denied and Defendant's motion for summary

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. http://www.ssa.gov/pressoffice/factsheets/colvin.htm She is substituted as the defendant pursuant to Fed.R.Civ.P. 25(d).

judgment [Docket No. 17] be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural History

Plaintiff Cecilia Taiwo protectively filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") in November 2006, alleging disability beginning September 21, 2006, based on back injury, arthritis in the knees, and diabetes. (Tr. 184-89, 210.)² Plaintiff was 56-years-old on her alleged onset date. (Tr. 187.) Her applications were denied initially and upon reconsideration. (Tr. 75-79, 88-90.) Plaintiff requested a hearing before an administrative law judge, and the hearing was held on August 13, 2009, before Administrative Law Peter C. Erickson ("ALJ"). (Tr. 95-99, 26-49.) The ALJ issued an unfavorable decision on August 28, 2009. (Tr. 54-65.) Plaintiff requested review by the Appeals Council, and the Appeals Council remanded to the ALJ for further consideration. (Tr. 66-69, 124-26.) On March 1, 20011, the ALJ issued a second unfavorable decision. (Tr. 7-19.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision on May 31, 2012, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.) *See* 20 C.F.R. §§ 404.981, 416.1481. On July 20, 2012, Plaintiff sought review from this Court. The parties then filed cross-motions for summary judgment. The sole issue presented is whether Plaintiff's work from May 4, 2004 through September 2006 constituted past relevant work.

### B. Relevant Hearing Testimony and Disability Reports

Plaintiff completed a Disability Report for the SSA after she filed her applications for disability benefits. (Tr. 209-15.) She indicated that she had "light work duties" as a nursing

---

³ The Court will cite the Administrative Record in this matter, Docket No. 8, as "Tr."

assistant until she was laid off. (Tr. 210.) She described her job at First Christian Nursing Home ("First Christian") as follows: "I would take food orders. I would sit down and talk with residence [sic] and help them with general hygiene functions." (Tr. 211.) The job required walking two hours per day, standing four hours per day, and sitting for two hours per day. (*Id.*) She never lifted more than ten pounds. (*Id.*) In December 2006, Plaintiff completed a Work History Report form for the SSA. (Tr. 233-40.) She worked as a nursing assistant at First Christian from April 2003 through September 2006. (Tr. 233.) She described her job: "I follow clients to their daily activities and supervise the cares they do. Assist them with their daily meals." (Tr. 234.) The job required her to walk fifteen minutes, stand fifteen minutes, sit four hours, and complete written reports. (*Id.*) She did not have to lift and carry more than ten pounds. (*Id.*) She supervised three people during meals and showers. (*Id.*)

Plaintiff testified about her work as a light duty nurse assistant at the hearing before the ALJ on August 13, 2009. (Tr. 33-37.) Plaintiff last worked in September 2006, and she was laid off when the First Christian closed. (Tr. 33.) Plaintiff received unemployment benefits. (Tr. 33-34.) She also settled a workers' compensation claim for a knee injury in early 2006, for a lump sum of $35,000. (Tr. 34-35.) Before she hurt her knee, she took care of eight to ten residents in a nursing home, helping them shower, make their beds, and have meals. (Tr. 35.) After her knee injury, her employer found light duty work for her to do such as talking to residents and getting them water. (Tr. 36.) She worked for almost two years after the injury, until the nursing home closed. (*Id.*) She was paid the same amount of money as regular duty, and no one else in the facility had light duty work. (Tr. 37.)

3

C.  **Letter from QRC**

Charlotte O'Keefe worked with Plaintiff as a Qualified Rehabilitation Consultant ("QRC") in connection with Plaintiff's May 4, 2004 work-related injury. (Tr. 303.) Before her injury, Plaintiff performed all the duties of a nursing assistant. (*Id.*) After her injury, the employer offered her light duty work. (*Id.*) O'Keefe believed Plaintiff was offered a permanent position to minimize First Christian's workers' compensation liability. (*Id.*) When Plaintiff reached an agreement with her employer, her attorney requested that all rehabilitation services be terminated. (*Id.*) It was Ms. O'Keefe's understanding that Plaintiff's duties were minimal, keep the residents company and bring them drinks occasionally. (*Id.*) She did not believe Plaintiff helped the residents at mealtime. (*Id.*) Ms. O'Keefe believed Plaintiff's work after her injury was a "make-work" situation "that bore no resemblance to competitive employment." (*Id.*) In the real world, the value of her services was minimal. (*Id.*)

D.  **The ALJ's Decision**

After the case was remanded by the Appeals Council for further consideration, the ALJ issued his decision denying Plaintiff's applications for DIB and SSI on March 1, 2011. (Tr. 7-19.) Plaintiff had stipulated to the residual functional capacity finding from the ALJ's August 25, 2009 decision: "light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she is limited to occasional bending, twisting, stooping, kneeling, crawling, crouching, balancing and climbing." (Tr. 10, 15.) Plaintiff waived her right to appear at the hearing and agreed with the ALJ that the issue presented was "whether the work the claimant performed from 2004 through 2006 for [First Christian] was substantial gainful activity so as to qualify as past relevant work." (Tr. 10.)

The ALJ found Plaintiff's job as a light duty nursing assistant was past relevant work, and

4

Plaintiff was capable of performing it. (Tr. 17-19.) The ALJ quoted Plaintiff's description of her job, "I follow clients to their daily activities and supervise the cares they do. Assist them with their daily meals." (Tr. 17.) Plaintiff said the job required her to walk for fifteen minutes, stand for fifteen minutes, sit for four hours, and never lift more than ten pounds. (*Id.*) Before her knee injury, she cared for eight to ten nursing home residents, giving them showers, dressing and feeding them. (*Id.*) After her injury, she only talked to the residents and gave them water. (*Id.*) Plaintiff's QRC said her only responsibilities were to keep the residents company and occasionally get someone a drink. (*Id.*) The QRC did not believe Plaintiff helped residents with meals. (*Id.*) Plaintiff did not provide a statement from her employer, which went out of business in 2006. (*Id.*)

Plaintiff's job as a light duty nurse was performed within the past fifteen years, and she worked long enough to learn the job. (*Id.*) The remaining issue was whether the work was substantial gainful activity. (*Id.*) Plaintiff had the following earnings form First Christian: in 2004, more than $25,000; in 2005, more than $16,000; in 2006, more than $17,000. (*Id.*) Plaintiff also had income from three other employers in this time period. (*Id.*) Under the SSA regulations, the amounts presumed to be substantial gainful activity were as follows: 2004 - $810 per month; 2005 - $830 per month; and 2006 - $860.00 per month. (*Id.*) Therefore, there was a strong presumption that Plaintiff's work constituted substantial gainful activity. (*Id.*)

The ALJ considered a number of cases involving whether the claimant's work activity was substantial work activity.[3] (Tr. 17-18.) First, the ALJ found there was no "relationship of friendship

---

[3] The ALJ considered *Thompson v. Sullivan*, 928 F.2d 276 (8th Cir. 1991) (concluding the claimant's earnings were charity and not payment for services); *Cooper v. Sullivan*, 919 F.2d 1317 (8th Cir. 1990) (earning over the substantial gainful activity limit created a strong presumption of substantial gainful activity, and the claimant's relationship with the employer did not rise to the level of charitable employment); *Pollard v. Astrue*, Civ. No. 09-513 (June 7, 2010) (claimant failed to

or benevolence between the claimant's employer and the claimant." (Tr. 18.) There was an assertion in the record that Plaintiff's employment at the nursing home was continued after her work injury to avoid paying workers' compensation benefits to her. (*Id.*) There was, however, no documentation of a workers' compensation claim in the file. (*Id.*) Claimant only started working at the nursing home a year before her knee injury, and she continued to work for years after her injury, according to her, doing little to nothing and being paid more than $15,000 a year. (*Id.*) The ALJ also found it noteworthy that Plaintiff had two other jobs in 2006 and one other job in 2004, with total earnings each year more than $24,000. (*Id.*)

When Plaintiff filed her claim, she said her job involved following clients through their daily activities, supervising their personal care, and assisting them with daily meals. (*Id.*) The ALJ found these were significant physical and mental activities. (*Id.*) The claimant's testimony and the letter from her QRC were not enough to persuade the ALJ that Plaintiff's activities for First Christian were worth less than the substantial gainful activity amount of $810 to $860 per month from 2004 through 2006. (*Id.*) Thus, Plaintiff performed significant physical and mental activities for pay or profit. (*Id.*) Her work constituted past relevant work, and her residual functional capacity allowed her to perform the job as it was actually performed. (Tr. 17-19) (citing 20 CFR 404.1565; 416.965). The ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from September 21, 2006 through the date of the decision. (Tr. 19) (citing 20 CFR 404.1520(f) and 20 CFR 416.920(f)).

---

rebut presumption of substantial gainful activity where she offered only her own testimony and a letter from a former employer.)

## II. STANDARD OF REVIEW

The claimant bears the burden of proving his or her entitlement to disability benefits. 20 C.F.R. § 404.1512(a); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991). Review by this Court is limited to a determination of whether a decision of the ALJ is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Davidson v. Astrue*, 578 F.3d 838, 841 (8th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brace v. Astrue*, 578 F.3d 882, 884 (8th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted)). "The substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). "'Substantial evidence on the record as a whole,' . . . requires a more scrutinizing analysis." *Id*.

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). The Court should not reverse the Commissioner's finding merely because evidence may exist to support the opposite conclusion. *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994); *see also Woolf*, 3 F.3d at 1213 (if supported by substantial evidence, the ALJ's determination must be affirmed, even if substantial evidence would support the opposite finding.) Instead, the Court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." *Gavin*, 811 F.2d at 1199.

## III. DISCUSSION

Past relevant work is defined as work experience "done within the last 15 years, lasted long

enough for you to learn to do it, and was substantial gainful activity." 20 C.F.R. § 404.1565. The regulations define substantial gainful activity:

> Substantial gainful activity is work activity that is both substantial and gainful:
>
> (a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
> (b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

20 C.F.R. § 404.1572(a),(b). General information about work activity is found in 20 C.F.R. § 404.1573:

> (a) The nature of your work. If your duties require use of your experience, skills, supervision and responsibilities, or contribute substantially to the operation of a business, this tends to show that you have the ability to work at the substantial gainful activity level.
> (b) How well you perform. We consider how well you do your work when we determine whether or not you are doing substantial gainful activity... If you are doing work that involves minimal duties that make little or no demands on you and that are of little or no use to your employer, or to the operation of a business if you are self-employed, this does not show that you are working at the substantial gainful activity level.

A claimant's earnings may show she has done substantial gainful activity. 20 C.F.R. § 404.1574(a)(1). Earnings that will ordinarily show a person engaged in substantial gainful activity are $810 per month in 2004, $830 per month in 2005, and $860 per month in 2006. 20 C.F.R. § 404.1574(b).[4] The presumption that these earning reflect substantial gainful activity is rebuttable.

---

4 Substantial Gainful Activity, available at
http://www.socialsecurity.gov/OACT/COLA/sga.html

*Thompson v. Sullivan*, 928 F.2d 276, 277 (8th Cir. 1991). The presumption is rebutted if the record as a whole indicates the claimant's earnings were charity rather than payment for services. *Id.* at 278. Work done under special conditions may not be considered substantial gainful activity. 20 C.F.R. § 404.1573(c). Examples of special conditions include but are not limited to: 1) the claimant required and received special assistance from other employees in performing her work; 2) the claimant was allowed to work irregular hours or take frequent rest periods; 3) the claimant was provided with special equipment or was assigned work especially suited to her impairment; 4) the claimant was only able to work because of specially arranged circumstances; 5) the claimant was permitted to work at a lower standard of productivity or efficiency than other employees; or 6) the claimant was allowed to work because of a family relationship, past association with her employer or her employer's concern for her welfare. *Id.*

Plaintiff contends her work of giving the nursing home residents company and bringing them drinks required less than the basic mental demands of unskilled work, defined in Social Security Ruling 85-15 as the ability to "understand, carry out, and remember simple instructions." (Pl's Mem. in Supp. of Mot. for Summ. J. at 6-7.) Plaintiff asserts there were no instructions for her to carry out. (*Id.* at 7.) She further claims the ALJ incorrectly stated that she said she followed her clients through their daily activities, supervised them, and assisted them with daily meals. (*Id.*) Plaintiff contends she only performed these duties prior to acting under "light duty." (*Id.*)

The Commissioner contends Plaintiff's own statements are the only evidence she presented to rebut the presumption of substantial gainful activity because her QRC did not have personal knowledge of Plaintiff's work responsibilities after she settled her workers' compensation claim. (Def's Mem. in Supp. of Mot. for Summ. J. at 7.) The Commissioner contends the ALJ gave good

9

reasons not to credit Plaintiff's testimony. (*Id.*) When Plaintiff first applied for benefits in 2006, she said she supervised up to three residents while they performed their daily activities, assisted them with showering and daily meals, lifted up to ten pounds, and completed written reports. (*Id.*)

The Commissioner also asserts it was proper for the ALJ to take into account that Plaintiff was unable to get anyone from her former employer to "back up her claim." (*Id.* at 8.) The ALJ also relied on the fact that Plaintiff performed two other jobs while working light duty at First Christian. (*Id.*) Finally, the ALJ did not believe Plaintiff worked for two years doing practically nothing, and was paid tens of thousands of dollars for this, given that she had no relationship of friendship or benevolence with First Christian. (*Id.*)

The Court agrees with the Commissioner that the QRC's letter does not appear to be based on first hand knowledge, and presumably was based on statements Plaintiff made to the QRC. All of the QRC's statements about Plaintiff's light duty activities were preceded by phrases such as "I believe" and "it is my understanding". Nothing in the QRC's letter indicates that the QRC had personal knowledge of Plaintiff's work activities during the relevant period. Therefore, if Plaintiff's testimony is not credible, her QRC's statements may also be discounted.

The Court finds discrepancies in how Plaintiff described her work in written reports for the SSA in 2006 and how she described her work at the hearing before the ALJ on August 13, 2009. Plaintiff testified that before she went on light duty, she took care of eight to ten residents in a nursing home, helping them shower, make their beds, and have meals. (Tr. 35.) Plaintiff's QRC said Plaintiff performed all the duties of a nursing assistant before her injury. (Tr. 303.) When Plaintiff completed a Disability Report in 2006, she described her work at First Christian as light duty. (Tr. 210.) Specifically she said, "I would take food orders. I would sit down and talk with residence [sic]

10

and help them with general hygiene functions." (Tr. 211.) She walked two hours per day, stood four hours per day, and sat for two hours per day. (*Id.*) She never lifted more than ten pounds. (*Id.*)

Plaintiff also completed a Work History Report in December 2006. There, she wrote, "I follow clients to their daily activities and supervise the cares they do. Assist them with their daily meals." (Tr. 234.) She also said the job required her to walk fifteen minutes, stand fifteen minutes, sit four hours, and complete written reports. (*Id.*) She did not have to lift and carry more than ten pounds. (*Id.*) She supervised three people during meals and showers. (*Id.*) Plaintiff contends that in her written reports to the SSA in 2006, she was describing her work duties before she went on light duty. This is inconsistent, however, with Plaintiff's testimony that she cared for eight to ten residents before her injury, and her QRC's statement that she performed all duties of a nursing assistant before her work injury.[5]

Plaintiff had been working light duty from the time of her May 2004 injury until she was laid off in September 2006, and applied for social security disability benefits. It strains belief that in her 2006 written reports, where she indicates her work was light duty, that she was describing how she performed her work before her injury in May 2004. Based on the inconsistency with Plaintiff's testimony and her written description of her work activity, it was proper for the ALJ to credit Plaintiff's 2006 written statements over her testimony at the hearing in 2009. Supervising three nursing home residents in their daily activities and helping them with their meals and "general hygiene" involves significant physical and mental activities, and she received earnings above the presumed amount for substantial gainful activity. Therefore, Plaintiff's work at First Christian from

---

[5] In the Vocational Expert's written vocational analysis, he indicated that the job of a nurse assistant, identified in the Dictionary of Occupational Titles, Code 355.674-014, was medium exertional, semiskilled work. (Tr. 295).

11

May 4, 2004 to September 21, 2006 qualifies as past relevant work. The ALJ's decision should be affirmed.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

1. Plaintiff's Motion for Summary Judgment [Docket No. 14] be **DENIED**;

2. Defendant's Motion for Summary Judgment [Docket No. 17] be **GRANTED;**

3. If this Report and Recommendation is adopted, that judgment be entered accordingly.

Dated: July 10, 2013          *s/ Arthur J. Boylan*
                              ARTHUR J. BOYLAN
                              United States Chief Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before July 25, 2013.